# CHARLESTON.

THE STAR GROCERY CO. *v.* BRADFORD *et al.*

Submitted June 10, 1911.  Decided March 12, 1912.

1. PRINCIPAL AND SURETY—*Creation of Relation—Execution of Written Instrument.*

    Sureties in a bond are not released by omission of the principal to execute it, if he is bound by law or a collateral contract, recited in the bond, for the performance of the duty recited in the condition thereof.  (p. 497).

2. SAME—*Creation of Relation—Execution of Writing.*

    Such technical incompleteness in the bond, under such circumstances, imposes upon the obligee no duty of inquiry as to whether it was delivered by the sureties on condition that the principal should execute it, nor to require him to do so;  since the sureties suffer no substantial prejudice from such omission.  (p. 498).

3. EVIDENCE—*Admission—Nature and Form.*

    Receipts, statements and other evidences of liability in the hand writing of the principal are admissible evidence against the sureties and prove *prima facie* liability on their part.  (p. 500).

4. SAME—*Best and Secondary Evidence—Relation of Witness to Subject Matter.*

    Relation of a witness to the subject matter of his testimony, such as his incumbency of an office in a private corporation on whose behalf, as a party to the suit, he is to testify, may be shown by his oral evidence.  (p. 501).

Error to Circuit Court, Ritchie County.

Action by the Star Grocery Company against W. Bradford and another.  Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*Robinson & Prunty,* for plaintiffs in error.

*Kreps & Russell* and *Adams & Cooper,* for defendant in error.

POFFENBARGER, JUDGE:

The bond, constituting the basis of this action and given by a traveling salesman to secure faithful performance of his written contract with his principal, contains, in the obligatory clause thereof, the name of the salesman, described as principal, and the condition recites his employment, his duty to collect accounts for his employer and the existence of an article of agreement between them, giving its date, but is signed by the two defendants herein only as sureties.

Its obligation as to them is denied on two grounds:  (1) its acceptance by the obligee in an obviously incomplete condition, and (2) acceptance thereof by the obligee with knowledge of its execution and delivery upon condition that other persons, who did not do so, were to execute it as sureties along with the defendants and the principal, one O. J. Wilson.

Incompleteness of a bond on its face, when tendered to the obligee, is sufficient to put him upon inquiry as to whether those whose signatures it bears intended to be bound by it in such condition.  This is particularly and universally true when the names of persons, apparently contemplated as additional sureties appearing in the body of the bond or elsewhere, have not been signed to it.  *Wendlinger* v. *Smith,* 75 Va. 309; *Nash* v. *Fugate,* 32 Grat. 595; *Ward* v. *Churn,* 18 Grat. 801; *Hicks* v. *Good,* 12 Leigh 479.  The apparent imperfection is suggestive of a delivery upon condition, and imposes upon the obligee the duty of inquiry as to whether there was such a qualified delivery, omission of which releases the sureties, and parol evidence is admissible to prove the condition, which diligent inquiry would have revealed.

Nothing on the face of this bond, however, indicates incompleteness as to the sureties, or failure of any person to sign it as surety.  But lack of the signature of the principal renders it

in a sense incomplete and this fact is relied upon as having the same effect as incompleteness in respect of sureties. As to whether lack of the signature of the principal raises the same duty on the part of the obligee, and discharges the sureties in case of omission thereof, the authorities are in conflict. In some jurisdictions and under some circumstances, the sureties are held not bound. *Wood* v. *Washburn,* 2 Pick. 24; *Ferry* v. *Budget,* 21 Conn. 602; *Brown* v. *Jetmore,* 70 Mo. 228; *Russell* v. *Annable,* 109 Mass. 72; *Bryant* v. *Kinyon,* 127 Mich. 152; *Bean* v. *Parker,* 17 Mass. 591; *People* v. *Hartley,* 21 Cal. 585; *Johnson* v. *Township,* 39 Mich. 187; *Lyman* v. *Williams,* 84 Ill. App. 82. On the contrary, many cases hold the bond good and valid as to the sureties, without the signature of the principal, when the latter is bound by law or his special contract, for the debt or default for which the bond was given. *State* v. *Bowman,* 10 Ohio 445; *Trustees* v. *Sheib,* 119 Ill. 579; *Pema County* v. *Snyder,* 44 Pac. Rep. 297; *Cockrill* v. *Davie,* 35 Pac. Rep. 958; *Mitchell* v. *Building Stone Co.,* 129 S. W. 148; *Wright* v. *Jones,* 120 S. W. 1139; *Williams* v. *Marshall,* 42 Barb. 524; *Brewing Assn.* v. *Hayes,* 97 Fed. Rep. 859. The decided weight of authority throughout the country and especially of the later cases is that the sureties are bound by such an instrument, if the principal is bound by law or his special contract for the debt or default for which the sureties have obligated themselves. The argument of inconvenience or violation of technical rules is answered by the court in *State* v. *Bowman,* cited, as follows: "Great reliance is placed upon the fact, that if the instrument is not executed by the principal, it will affect the remedy over against him by the securities. There would be great force in this argument, if the remedy were destroyed; but it is not, the force and the extent of his liability to them are unimpaired. Whether they could use the bond, *per se,* as evidence of his liability, presents a question merely of convenience in the use of the right, but does not affect the right itself, any more than would the loss or destruction of the bond." That the sureties can recover from the principal what they have been compelled to pay on account of their suretyship in a bond not executed by the principal, is asserted in *Harnsberger* v. *Yancey,* 33 Grat. 537. This being true, the sureties are not in any

substantial sense prejudiced by inability of the obligee to sue the principal along with them on the bond. The ground of their release, in case of the omission of a surety to sign, as contemplated by the parties, is the injury resulting to those who signed in case they were bound, because of their inability to exact contribution from the omitted co-surety, since he is not bound at all. This result cannot be predicated of the omission of the principal to sign, when the law or another contract binds him as firmly and fully as the bond would have bound him, had he executed it, and for the benefit of the sureties under the law of subrogation as well as that of the obligee. Every rule and exception is co-extensive only with the reason underlying it, and, as there is no substantial reason for discharge of the sureties under such circumstances, they should be held liable. The equitable remedies for subrogation and indemnity are as fully available and efficacious as if the principal had executed the bond. In no substantial sense, therefore, are the sureties affected by the omission.

The record discloses no direct evidence of notice to the obligee of any agreement with the two defendants, the obligors in the bond, for additional sureties. The charge of such notice stands upon the theory of agency ·on the part of the principal debtor to obtain the bond. Having sought employment by the obligee he had been required, as a condition, to give a bond with two sureties to be approved by his employer. He submitted the names of the two defendants, but no others, so far as the evidence indicates, and they, after investigation as to their financial ability, were accepted. Then Wilson, the principal debtor, went and procured their signatures to the bond as prepared by the obligee. He obtained and gave this bond as a condition of his employment. Prior to that time, he had not been unconditionally employed, nor permanently employed at all. Obviously, therefore, the procurement of the bond was primarily his business and not that of his employer, and accordingly he must be held to have acted for and on behalf of himself and not of his prospective employer in the procurement of it. No authority sustaining the contention of the plaintiff in error for the theory of agency under such circumstances has been produced or found. *Newlin* v. *Beard,* 6 W. Va. 110, invoked for the purpose, does

not do so. Before the principal debtor in that case was directed to obtain sureties on the bond, it had been accepted as complete without any sureties on it. Here there had been no such acceptance. There the obligee, having completed a contract, made the debtor his agent to obtain sureties. Here the principal acted for himself, because no contract had been completed. He was making a contract for his own benefit. The facts here shown apply the rule stated in *Lytle* v. *Cozad,* 21 W. Va. 183, declaring the principal to be the agent of the sureties.

Wilson defaulted and left the country. His successor as salesman for the territory he had traveled called upon the customers of his employer and obtained from them evidence of the collections made by Wilson in the form of invoices receipted by him and checks in payment of invoices, made payable to his employer and collected by him, after his endorsement of his employer's name by him as agent. These receipted invoices and checks were admitted as evidence of liability on the bond. A statement in the hand writing of Wilson, showing a balance against him of $460.75, for which he gave his check, together with the protested check, were also introduced as evidence, supplemented by proof of lack of funds in the bank on which the check was drawn to pay it. In one instance, the customer testified to the payment of a bill not accounted for by Wilson. In all the instances in which checks appeared to have been given and endorsements made by Wilson, his hand writing was proved. In addition to this evidence, the bookkeeper of the employer, with the books in his possession and at hand, testified to the delivery and shipment of all the goods the purchase money of which was shown to have been collected as aforesaid. Admissibility and sufficiency of this evidence are challenged on account of its alleged secondary character. It is unnecessary to enter upon an inquiry as to the classification of evidence referred to in the brief. The receipts, checks and statement in the handwriting of the principal constitute admissions by him, made within the period of his employment and in the course thereof, and are admissible against the sureties, according to all authority, and sufficient, in the absence of any contradiction thereof, to fix liability upon them. "Accounts, entries and written statements by the principal are *prima facie* evidence against his sureties, in

some states being conclusive." 32 Cyc. 137. See also Brandt on Suretyship, secs. 798-800; I Greenleaf Ev., secs. 187, 188. To the admission in argument of the admissability of this evidence against Wilson, if he were a party, we add these authorities, conclusively showing it to be likewise admissible against his sureties. Clearly admissible, covering the full amount of the recovery and wholly uncontradicted, it precludes any possible verdict, other than the one rendered and, therefore, the error, if any, in admitting the testimony of the bookkeeper as to the delivery of the goods was obviously harmless. Hence there is no occasion for inquiry as to its admissibility.

The testimony of McConnanghey, president of the plaintiff company, was objected to for lack of documentary proof of his position as president. According to well settled practice, his own evidence as to that was sufficient to establish it *prima facie,* because the fact was collateral in character. His office in the corporation was not in issue. The sole purpose of proof of his position was to show how or why he had done certain things and possessed certain knowledge. To establish such a status for such purpose, the highest and best evidence is not required. Generally, it is conceded. In qualifying experts, physicians and lawyers are not required to produce their licenses. Their oral testimony suffices everywhere.

These conclusions destroy the basis of all the numerous assignments of error. The court properly refused to set aside the verdict and rendered judgment upon it. It did not err in holding the defendants liable on the bond. There was no error in admitting the receipts and checks to establish the liability and its extent. There was no error in permitting McConnaughey to testify. If there was any error in the admission of Brohard's testimony as to sales of goods, Wilson's written admissions and the testimony of a customer, all uncontradicted, covered all of that. Some of the instructions asked for by the defendants and refused were in direct conflict with the law as here stated, and others declared legal propositions having no foundation in the evidence. It would subserve no good purpose to quote and analyze them. From what has been said it is apparent that there was no evidence of any fraud in the procurement of the bond. If there was any error in the rulings upon objections to evidence

it was harmless for the reasons herein stated. Practically all of such objections were based upon the untenable positions, already disposed of.

Seeing no error in the judgment, we affirm it.

*Affirmed.*