# CHARLESTON

La Belle Iron Works v. Quarter Savings Bank *et als.*

Submitted June 3, 1914. ·Decided June 23, 1914.

1. Indemnity—*Declaration—Sufficiency.*

    The declaration on a bond of indemnity given a corporation issuing a duplicate certificate of stock in lieu of one alleged to have been lost, pursuant to section 38, chapter 53, serial section 2871, Code 1913, held good on demurrer. (p. 573).

2. Corporations—*Trust Relation to Stockholders—Transfers and Registration of Stock.*

    A corporation is trustee for its stockholders, and is bound to protect their interests, as well in respect to transfers and registrations of its stock, as in all other matters pertaining to the business intrusted to it. (p. 574).

3. Same—*Stock—Issuance of Duplicate Certificate—Indemnity Bond.*

    In case of loss of an original certificate of stock a corporation by the common law, and now by virtue of the statute, may be compelled, on terms of being secured by bond against loss, to issue to the owner of the stock a duplicate certificate, but not without incurring liability to a bona fide holder for value of the original certificate not lost, and also to an innocent holder after transfer of a certificate based on such duplicate certificate; but in either case the bond of indemnity taken protects it against loss from any source growing out of the issuance of such duplicate certificate. (p. 574).

4. Indemnity—*Action on Bond—Defense.*

    To be binding on a surety a bond of indemnity purporting to be the bond of both principal and surety must be signed by the principal, or be executed on his behalf by some one duly authorized, or the unauthorized act be subsequently ratified, or the principal be bound independently of the bond for breaches thereof, unless the surety has otherwise agreed to be bound thereby, or by his act he has estopped himself from denying his liability, and pleas of non est factum by the surety setting up want of such proper execution of

the bond by the principal, and his non-liability thereon, or for breaches thereof, constitute a good defense.   (p. 575).

5.  SAME—*Bond—Liability of Surety—Agency.*
    If such bond on its face purports to be the bond of principal and surety, and to be executed on behalf of the principal by an agent, it is the duty of the obligee in the bond to know the authority of the agent, and if such agent is not so authorized and the obligee accept the bond, the surety will not be bound thereby, though he may know that the bond has been so executed on behalf of the principal, and have reasonable cause to know the agent's want of authority, nor will he be thereby deprived of his right to set up such want of authority by way of defense.   (p. 577).

6.  PRINCIPAL AND AGENT—*Unauthorized Acts—Ratification.*
    If the principal named in such bond would escape responsibility for the unauthorized act of his agent in signing and executing the bond on his behalf he must promptly repudiate the same before the rights of third persons intervene, else he will be held to have ratified the unauthorized act, and be estopped to deny the agent's authority.   (p. 578).

7.  INDEMNITY—*Action on Bond—Evidence—Declaration.*
    Though a good cause of action on such indemnity bond be presented by the declaration the corporation plaintiff must fail if its evidence is insufficient to support the material allegations on which right of recovery on the bond depends.   (p. 580).

8.  APPEAL AND ERROR—*Review—Trial By Court—Disposition of Cause.*
    Where a jury is waived and a case is submitted to the trial court on the law and facts the rule in this court is to treat the case as upon demurrer to the evidence, and if plaintiff's evidence is not sufficient to support the findings and judgment below in his favor to reverse the judgment and enter judgment here for defendant.   (p. 582).

9.  SAME—*Trial by Court.*
    But if in such case it appears that the evidence in fact probably exists by which a good case can be made on any issue on which right of recovery depends, and that there has been omission under misapprehension of law to adduce such evidence, the trial court should withhold its findings and judgment, and give the party in default reasonable opportunity to sustain his case; and if this has not been done, the judgment below will be reversed on writ of error and a new trial awarded.   (p. 583).

    (LYNCH, JUDGE, absent.)

Error to Circuit Court, Ohio County.

Action by the La Belle Iron Works against the Quarter Savings Bank and others.   Judgment for plaintiff, and the

defendant United States Fidelity & Guaranty Company brings error.

*Reversed and Remanded.*

*Russell & Russell* and *Ritz, Blackford, Bradshaw & Beans,* for plaintiff in error.

*John J. Coniff* and *A. C. Lewis,* for defendant in error.

MILLER, PRESIDENT:

This is an action on an indemnity bond purporting to have been executed to plaintiff by defendants, Quarter Savings Bank and White & White, as principals, and the United States Fidelity and Guaranty Company, plaintiff in error, as surety, pursuant to section 38, chapter 53, serial section 2871, Code 1913, indemnifying plaintiff in issuing to White & White a duplicate certificate for 50 shares of its capital stock then standing on its books in their names and numbered 5022, and represented as having been lost after being pledged by them to said bank as collateral security for a loan.

Said section of the statute is as follows: "38. When a person to whom a certificate has been issued, alleges it to have been lost, he shall file in the office of the corporation, first, an affidavit setting forth the time, place and circumstances of the loss, to the best of his knowledge and belief; second, proof of his having advertised the same in a newspaper of general circulation, published near the principal office of the corporation, once a week for four weeks; and third, a bond to the corporation, with one or more sufficient sureties, conditioned to indemnify the corporation and all persons against any loss in consequence of a new certificate being issued in lieu of the former. And thereupon the board of directors shall cause to be issued to him a new certificate, or duplicate of the certificate alleged to be lost."

The bond reciting the issue of said certificate, the reputed loss thereof after it was so pledged, in the penalty of ten thousand dollars, is conditioned as follows: "Now the condition of this obligation is such, that if the above bounden Quarter Savings Bank and White and White, their heirs, representatives, successors or assigns, shall and do, from time to

time, and at all times hereafter, well and sufficiently indemnify save and keep harmless the said La Belle Iron Works, .its successors and assigns and all persons, and corporations, from and against any use of the said certificate of stock hereinbefore particularly described, and from and against all claims, demands, costs and expenses to which the said La Belle Iron Works, its successors or assigns, shall or may be subjected by reason or growing out of the loss or destruction of said certificate as above recited, and by reason or growing out of the issue of the said new certificate in lieu of the said certificate so lost or destroyed; and further if the above bounden Quarter Savings Bank and White and White, their heirs, representatives, successors or assigns, shall and do surrender or deliver to the said La Belle Iron Works the said lost certificate, if found; then this obligation to be void, otherwise to be and remain in full force and virtue.'' It will be observed that this condition is an amplification of the condition prescribed in the statute.

The amended declaration avers the execution of said bond, setting the same out in full. It avers issuance on the faith thereof of the duplicate certificate, the subsequent surrender thereof and on blank assignments of White & White issuance to others of new certificates therefor, whom the declaration alleges, were, at the time the original certificate turned up, innocent holders thereof; that the said original certificate, subsequent to the issue of said duplicate, and the making of the various transfers thereof, turned up in the hands of one Holloway, pledged to him by one Rhodahamel for a loan, and to whom, afterwards and at the request of Rhodahamel, the same was transferred on plaintiff's books, and a new certificate or certificates issued to him therefor, which were then delivered to said Holloway, pledgee, and who it is averred has been the real and bone fide owner and holder thereof since June, 1906. And it is averred that White & White at the time of the discovery of said original certificate had no longer any interest in any of said certificates.

It is moreover averred that upon discovery that said original certificate had not been lost, plaintiff demanded of the principals and the surety in said bond compliance with the several

conditions thereof, but which they had neglected, refused and failed to do, whereby an action had accrued, &c.

The demurrers being overruled, the case .was tried by the court in lieu of a jury on the plea of nil debet by United States Fidelity and Guaranty Company, and the Quarter Savings Bank, and also on a plea of non est factum by the bank, and issue joined thereon by plaintiff. The case as to de-· fendants White & White, not served with process, was continued.

Upon the issues and the evidence thereon the court below by the judgment complained of was of opinion that the Quarter Savings Bank was not liable to plaintiff, and as to said bank the case was dismissed with costs. But the court being further of opinion that under the evidence the United States Fidelity and Guaranty Company was liable to plaintiff, it was further considered that plaintiff recover from it the sum of seven thousand nine hundred and twenty-four and 50/100 dollars, with interest and the costs of the suit.

The first point of error to be considered is the overruling of defendants' demurrers to the amended declaration. It is said that it nowhere alleges how or to what extent plaintiff had been damaged by the turning up of the old or original certificate. We have examined the declaration carefully and have concluded that the averments, substantially stated above, do show a cause of action. The conditions of the bond prescribed by the statute are to indemnify the corporation and all persons against any loss in consequence of the new certificate being issued in lieu of the former. The condition of the bond sued on, while not following the exact language of the statute, covers with more elaboration all that is covered thereby, and more, but in no way affecting the bond as a statutory bond; and the averments of the breach of the several conditions of the bond we think make out a case for relief on the bond. That this is so arises from the relationship of a corporation to its stockholders, and the liability it incurs when issuing duplicate certificates, and transferring on its books stock standing in the name of one to another claiming to be owner of the stock, without surrender of the certificate representing the stock. The declaration alleges that the duplicate

certificate issued to White & White was subsequently surren-
dered and subdivided and new certificates issued to assignees,
and who became the innocent bona fide holders thereof for
value before the original certificate turned up, and before
plaintiff had notice of its existence or the actual ownership
thereof, and that the same had not in fact been lost; that
Rhodahamel or Holloway had owned the original certificate
since June, 1906, by assignment from White & White, to
whom it had been originally issued, and that on his demand,
and surrender of said certificate, the stock represented thereby
had been transferred to him on the corporation books and a
new certificate delivered to Holloway, pledgee. If all these
allegations be true had not the corporation been damaged to
the extent of its liability to the holders of these certificates of
stock? The declaration places plaintiff's damages at $6,350.00,
the market value of fifty shares of its stock in October, 1908,
the date the original certificate was presented by Rhodahamel
and transfer made to him. This allegation would not render
the declaration bad, even if the market value of the stock be
not the true measure of plaintiff's liability to the holders of
its certificates. If any damages were sustained, that damage
could be proven and recovered under the declaration alleging
damages.

The basis of corporate liability in such cases is the trustee
relationship of the corporation to its stockholders. And such
being its relationship to them it is bound to protect their in-
terests, as well in respect to transfers and registrations of its
stock, as in all matters pertaining to the business intrusted to
it. 1 Morawetz on Private Corporations, section 237; *Supply
Ditch Co.* v. *Elliott,* (Colo.) 3 Am. St. Rep. 586, 591; 10 Cyc.
787; *Id.* 590; *Railroad Co.* v. *Robbins,* 35 Ohio St. Rep. 483;
*Lewrey* v. *Bank of Baton Rouge,* 131 La. 30, 58 So. 1022, 30
Am. & Eng. Anno. Cases, 1168, and note 1173; 4 Thompson on
Corporations, section 4405 et seq.; 2 Cook on Corporations,
(7th ed.) sections 358-362, inclusive.

This duty of trust requires of a corporation not to permit
transfers of its shares without return and surrender of its
certificates properly indorsed. But in case of loss thereof,
formerly by the common law and now by statute, a corporation

may be compelled on terms of providing security to issue duplicate certificates, not, however, without at the same time incurring liability to the owner of the original certificate, nor indeed to innocent holders of certificates based on duplicate certificates.  In either case, the bond of indemnity taken protects it against loss or damage from any source growing out of the issuance of such duplicate certificates.  Besides the authorities cited see, also, *Citizens' Natl. Bank* v. *State ex rel. Kellogg,* (Ind.) 45 L. R. A. (N. S.) 1075 and note; *Shaw* v. *Goebel Brewing Co., Id.* 1090, and note, 202 Fed. 408; 10 Cyc. 633; 2 Cook on Corporations, (7th ed.) sections 402, 403.  Moreover, upon the principles of these authorities, a corporation has no discretion where the statute has been complied with, in regard to the issuance of duplicate certificates in place of those alleged to have been lost, unless it knows or has reason to believe the contrary to be the fact, and then it takes the risk of liability for damages, if the fact be as alleged.  So upon these principles of duty and liability there can be no question, we think, that the declaration alleges a good cause of action and that the demurrers were properly overruled.

Plaintiff in error next complains of the rejection of its two pleas of non est factum, so called.  Both are substantially alike.  They allege that the seal of the Quarter Savings Bank, one of the principals in the bond, was not affixed thereto as alleged, and that what purports to be the signature of the bank is not its signature; that said bond was never executed by it; that certificate of stock number 5022, alleged to have been lost or destroyed was never in fact in the possession or under the control of said bank, and was not lost or destroyed; that said bank did not then have and never had any interest in said certificate; that Knoke, cashier, who pretended to execute said bond on behalf of the bank by himself as cashier, was not then nor at any time authorized by its board of directors, or otherwise, so to do, and that said bank had no knowledge thereof until long afterwards, and was never at any time under any obligation to execute and deliver to plaintiff any such bond, and has never at any time ratified or approved the action of said Knoke, cashier, in signing and

sealing said bond on its behalf. The second plea avers in addition, that said bank was not a party to said bond, nor bound thereby, and being or purporting to be one of the principals therein, and apart therefrom, being in no way bound thereby, or by any collateral contract or otherwise to perform any of the obligations of the bond, it as surety is not bound and cannot be rendered liable to plaintiff thereon for any of the supposed breaches of said writing obligatory.

These pleas cover substantially the same matters of fact averred in the two pleas of non est factum pleaded by the Quarter Savings Bank, which it was permitted to file, and on the trial of which it prevailed in the court below. And not having been allowed to file its pleas plaintiff in error also complains here of the admission of the pleas of the bank, one of its principals. We interpret this complaint in the brief as cross-assignment of error.

The surety company's pleas of non est factum as well as those of the bank presented good defenses, and should also have been received. To be binding on a surety a bond of indemnity purporting to be the bond of both principal and surety must be signed by the principal, or be executed on his behalf by some one duly authorized, or the unauthorized act be subsequently ratified, or the principal be bound independently of the bond for breaches thereof, unless the surety has otherwise agreed to be bound thereby, or by his act he has estopped himself from denying his liability. *Star Grocery Co.* v. *Bradford,* 70 W. Va. 496, 39 L. R. A. (N. S.) 184; *School District* v. *Lapping,* 100 Minn. 139; *Bowditch* v. *Harmon,* 183 Mass. 290; *Novak* v. *Pitlick,* 94 N. W. 916; *Pima County* v. *Snyder,* 5 Ariz. 45, 44 Pac. 297; *Mitchell* v. *Hydraulic Building Stone Co.,* (Tex.) 129 S. W. 148; *Wright* v. *Jones,* (Tex.) 120 S. W. 1139; *Bjoin* v. *Anglim,* 97 Minn. 526; Stearns' Law of Suretyship, section 140, page 231; 32 Cyc. 41. And this general rule is applicable to surety companies doing a surety business. Stearns' Law of Suretyship, sections 250-253, and 255 and 260. And in *Dole Bros. Co.* v. *Cosmopolitan Preserving Co.,* 167 Mass. 481, and *Russell* v. *Annable,* 109 Mass. 72, it was held, in the first case, that reasonable cause to know on the part of a surety on a bond

purporting to be executed by the principal, by the hand of an agent, of the agent's want of authority, will not deprive the surety of the right to set up such want of authority in defense; and in the second case, that a bond given for the purpose of obtaining the dissolution of an attachment of partnership property, but purporting to be the bond of the individual members of the partnership, but signed in the partnership name by only one of the partners without the authority of the other, named as principal, was not binding on the surety. In brief the holding of these cases is that a bond which bears evidence on its face that it is not what it purports to be, the bond of both principal and surety, if the principal be not thereby or otherwise bound, will not bind the surety.

It is urged against the application of these principles to the case at bar, that a surety who signs a bond and permits the principal to turn it over to the obligee cannot escape liability because the person signing on behalf of the principal was not authorized; that it is the duty of the surety to see that the bond is properly executed by the principal, a duty which he cannot throw upon the obligee. The decisions cited and others cited by counsel for plaintiff do not support the proposition to the extent claimed. If a bond purporting to be the bond of one as principal and another as surety be signed by the surety only and delivered by him to the principal with the understanding that it is to be signed by the principal also, it will not bind the surety, though delivered by the principal to the obligee, because its infirmity appears on its face, and of which the obligee must take notice. So held in *School District* v. *Lapping, supra,* one of the principal cases cited and relied on by plaintiff's counsel. *Nash* v. *Fugate,* 32 Grat. 595, holds that a bond signed by all the principals and sureties named in the bond, and delivered to one of the principals, with the understanding that before delivery it shall be signed by other sureties; if delivered without the signatures of such additional sureties, though a number of blank spaces be left for other signatures, will bind the sureties. But a bond so signed does not bear on its face real evidence of any defect.

And this is the reason for the holding. *Mitchell* v. *Hydraulic Building Stone Co., supra,* point 3 of the syllabus holding that "A bond signed by the sureties is not void merely because it is not signed by the principal", is like our case of *Star Grocery Co.* v. *Bradford, supra,* holding that the sureties in such case will be bound if the principal be bound otherwise and independently of the bond. *Dair* v. *United States,* 16 Wall. 1, involved a bond perfect upon its face, apparently duly executed by all those whose names appeared thereto, and of course a surety would be bound on such a bond. We have examined all the decisions cited by counsel, but cannot burden this opinion with a review of all of them. None of them support to the full extent the proposition for which they are cited. According to the pleas the bond in this case was signed by Quarter Savings Bank, by Knoke, cashier. One dealing with an agent is bound to know his authority. This rule is applicable to the obligee in a bond. If he accepts a bond thus signed and it turns out that the agent was without authority, and the principal not bound, the surety cannot be rendered liable thereon, unless he, the surety, delivers the bond to the obligee and agrees to be bound, regardless of the liability of the principal thereon.

Now, on the merits of the case as made by the evidence: The success of plaintiff in error on its pleas depends, of course, on the success of the Quarter Savings Bank in sustaining the truth of its pleas. If it prevails thereon, then according to our views, already expressed, the plaintiff in error must also prevail, unless it be shown that notwithstanding the want of liability of the bank, it agreed to be bound, or by its acts it is in some way estopped to deny liability on the bond. It was proven by the minutes or by-laws of the Quarter Savings Bank that its president had been given authority to execute deeds, bonds and contracts for and on behalf of the corporation, and by oral evidence of its officers, that the cashier had no authority in that behalf. The bond sued on purports to have been executed on behalf of the bank by Knoke, cashier. Assuming the evidence to have established want of authority in Knoke, cashier, to sign the bond, the question presented, is, whether the bank by its

silence and neglect to notify plaintiff, after discovery of the alleged unlawful act of Knoke, did not ratify his act, or estop itself from denying his authority. The evidence shows that while the bank officers were prompt to notify the agent of the surety of Knoke's want of authority, and to repudiate his act, it gave no notice to the plaintiff until long afterwards. The record tends to show that plaintiff thereafter, and without notice, incurred further liability on the issuance of certificates and transfers of its stock to innocent holders of the shares based on said duplicate certificate. The record of the bank tends to show a loan to White & Baron, February 12, 1907, for $6,000.00, with 50 shares of La Belle Iron Works stock as collateral, and to White & White, March 8, 1907, of $5,500.00, with 50 shares of the same stock pledged as collateral. It is proven by Ebeling, the new cashier, that the first loan was paid, October 16, 1907, and the second, May 1, 1907. If so, both these loans were paid before the issuance of the duplicate certificate and the giving of the bond in December, 1907, following. Whether the original certificate for which the duplicate was issued had been or continued to be pledged to the bank at the date of the bond we do not know from the evidence, otherwise than from the declarations in correspondence between plaintiff and White & White and Knoke, and the recitals in the bond, declaring such to be the fact, and from evidence of the officers of the bank that its books showed no loan after October, 1907.

It is a well established principle, that if one would escape responsibility for the unauthorized act of his agent he must promptly repudiate the same before the rights of third parties intervene, otherwise he will be held to have ratified the unauthorized act and be estopped to deny the agent's authority. *Dewing* v. *Hutton*, 48 W. Va. 576, point 8 of the syllabus; *McConnell* v. *Rowland, Id.* 276; *Thompson* v. *Laboringman's Mer. & Mfg. Co.*, 60 W. Va. 42, 6 L. R. A. (N. S.) 311; *Lynch* v. *Smyth*, (Colo.) 54 Pac. 634; *Foster* v. *Rockwell*, 104 Mass. 167, 172; *Pitts* v. *Shubert*, (La.) 30 Am. Dec. 718. In *Thompson* v. *Laboringman's Mer. & Mfg. Co.*, *supra*, the third point of the syllabus is: "Failure on the part of a principal to dissent from or repudiate an un-

authorized act of his agent, within a reasonable time, dependent upon the nature of the transaction and the situation and surroundings of the parties concerned, is evidence of ratification of the unauthorized act.'' It is therefore proper to say, that if on the new trial to be ordered, the evidence should be the same as upon the first, we would hold the bank estopped by its negligence to notify plaintiff of Knoke's want of authority, and that it is liable on the bond, and being bound the surety would be bound also, and both sets of pleas would fail of evidential support.

The next inquiry is, was a case made out by proof entitling plaintiff to any judgment on the bond? Plaintiff would not be liable to White & White, or to any one else, holding a duplicate certificate obtained by fraud or theft, but only to an innocent holder for value of a certificate issued after transfer of the stock; nor would it be liable on the same principles to one who had stolen the original certificate, or had obtained it or a transfer of it by fraud, forgery or other unlawful means. 2 Cook on Corporations, (7th ed.) sections 358, 359, and notes. The declaration alleges facts which if true renders plaintiff liable to the innocent holder of the certificates based on the duplicate certificate and transfers thereof; and also to Rhodahamel or Holloway holder of the original certificate. But what of the evidence of those facts? If it was necessary to allege these facts, as we think it was, it was also quite as necessary to prove them. There is practically no evidence as to the bona fides or innocence of the present holders of the certificates representing the duplicate certificate issued to White & White, in December, 1907. The fact that the duplicate was issued, and on surrender thereof that certain other certificates were issued, and to whom, is fully proven, not by any exhibit of the certificates, nor by the books of the company, but by the oral evidence of the transfer clerk; but this is no direct proof of bona fides or the innocent holdings of such certificates for value. The surrender of the duplicate certificate duly assigned was prima facie evidence justifying the plaintiff in the transfer thereof and the issuance of new certificates to the assignees; but if as alleged the original certificate was not

lost, and the duplicate was based on a false affidavit, the latter must have had its origin in fraud or falsehood, and in the hands of White & White, at least, was void. Whether the new certificates outstanding issued in lieu of the duplicate are valid depends on proof of the bona fides and innocent holdings thereof, as alleged, estopping plaintiff; but, if not so held, and the holders took the same with notice of the fraud, or participated therein, plaintiff is not estopped, nor is there any liability of the corporation thereon. As to these material facts there is no proof, except the fact of the issuance of the certificates, and the presumption, if any, arising therefrom. Of course the affidavits of loss filed at the time the duplicate certificate was obtained were introduced in evidence. But what evidential force were they entitled to on the trial of the issues tendered by the declaration? We think very little, if any. They were not offered for that purpose, but rather to show justification for and regularity of plaintiff in issuing the duplicate certificate. On the other hand what evidence is there of title in Rhodahamel or Holloway to the original certificate? Of course ordinarily possession with blank assignment endorsed is prima facie evidence of ownership, and right to transfer of the stock on the books of the corporation. But as the evidence shows that plaintiff was advised by the affidavits of loss and bond given by the original holders and the pledgee of the stock that the original certificate had been lost, and upon that claim it had issued a duplicate certificate, it seems to us that these facts in evidence overcame the presumption of ownership arising from mere possession of the original certificate, and that plaintiff's case failed for want of sufficient proof to support it.

In the well considered case of *Greenleaf* v. *Ludington*, (Wis.) 82 Am. Dec. 698, which was an action by the holder by assignment of a certificate subsequently represented by his assignor to have been lost, and to whom on his giving bond as in this case a duplicate had been issued, to recover the value of the shares, on the ground that the corporation had refused to transfer the same to him on its books, the court justified the refusal of the corporation to make the transfer under the

circumstances as follows: "As to the objection that the bond was given to protect the company from loss by reason of the issue of the new stock, and not to prevent a transfer or recognition of the old, it is true that such is its language. Nevertheless, the only method in which the company could with safety avail itself of the security afforded by it, was to reject the old stock. The bond recited that Ludington owned and had lost the old stock. If the company recognized it without suit in which it could be judicially established that Ludington did not own and had not lost it, it took upon itself the risk and trouble of proving these facts, the very thing which the bond was designed to guard against, and then if it failed, it would be wholly without security. Hence, it could not do otherwise than refuse, and if sued give Ludington notice to defend. The refusal, therefore, was the legitimate consequence of accepting the bond and issuing the new stock." We think this good law and good sense. If so, the right of Rhodahamel or of Holloway, to the original certificate not having been previously adjudicated, when plaintiff allowed the shares to be transferred on its books to Rhodahamel, it assumed the burden not borne on the trial of this case, of showing the facts warranting the transfer as against White & White, the original owners, who had alleged the loss of the original certificate and had given bond to protect the corporation against damages. So we are of opinion the plaintiff must fail for want of proof to sustain the case made by the pleadings.

The question lastly presented is, what judgment shall be entered here. As stated a jury was waived and the case submitted to the court on both law and facts. The rule established here by numerous decisions is to treat the case as upon demurrer to the evidence, and if plaintiff's evidence is not sufficient to support the findings and judgment below to reverse the judgment and to enter judgment here for defendant. *Rohrbough* v. *United States Express Co.*, 50 W. Va. 148, 40 S. E. 398, 88 Am. St. Rep. 849, and cases cited; *Nutter* v. *Sydenstricker*, 11 W. Va. 535; *State* v. *Miller*, 26 W. Va. 106. See, also, *Claflin & Co.* v. *Steenbock & Co.*, 18 Grat. Anno. 842, and other Virginia and West Virginia cases

cited in note; *Hodge's Ex'or* v. *Bank*, 22 Grat. Anno. 51, and note.

But on reconsideration of the evidence we have concluded a case is presented for the application of the rule in *Peabody Ins. Co.* v. *Wilson & Beasley*, 29 W. Va. 528, re-affirmed at the present term in *Cook* v. *Raleigh Lumber Co.*, 82 S. E. 327, not yet officially reported. As stated in the second point of the syllabus in the latter case, that rule is: "If, in a case submitted to the court in lieu of a jury, for its findings on questions of fact, making the parties, respectively, demurrant to the evidence and demurree, there has been an omission, under a misapprehension of law, to adduce any evidence on the issue upon which the right of recovery depends, the trial court should decline to make its findings or render judgment, until it has settled the legal question by which the omission was occasioned and given the party in default an opportunity to supply the evidence necessary to sustain his case; and, if not having done so, it has rendered judgment without development of the merits of the case, the judgment will be reversed and a new trial awarded, in furtherance of justice."

The judgment below will, therefore, be reversed and defendants awarded a new trial.

*Reversed and Remanded.*