## CHARLESTON.

THE CITY OF ELKINS *v.* ELKINS ELECTRIC RAILWAY Co *et al.*

Submitted October 26, 1920.   Decided November 23, 1920.

1.  INDEMNITY—*Bond Providing for Execution by Two Principals is Not Binding on Surety Unless so Executed or Unless Principal Not Executing it is Otherwise Bound.*

    A bond conditioned to pay to a municipal corporation such damages as may be done to its streets by the removal of street railway tracks therefrom, providing on its face that it is to be executed by two principals and a surety, to be binding upon such surety must be executed by both of such principals, unless the one not executing it is bound directly to the obligee therein by law or by contract to perform the obligation of the bond.  (p. 353).

2.  FRAUDS, STATUTE OF—*Indorser's Relief from Corporation's Debts by Fund Derived from Sale of its Property Held no Consideration for His Oral Promise to Secure Fund.*

    The fact that one, who is a large stockholder of a corporation and an endorser on a large amount of its debts will be relieved as such endorser by the payment of said debts from a

fund derived from the sale of certain property of the corpora‑
tion, will not be sufficient consideration for an oral promise of
such party to perform an obligation of the corporation neces‑
sary to be performed in order to secure the fund for the pur‑
pose of paying such debts. Such promise is collateral, and
the benefits arising are too remote to be a valid consideration
for the same.   (p. 354).

3.   INDEMNITY—*Service of Required Process on Principal on
    Bond Held Not Made With "Due Diligence" Within the Pro‑
    visions of the Bond.*

A provision in a bond given to indemnify a municipal cor‑
poration for any damages that may be sustained by reason
of the failure of a street railway companay to replace city
streets injured by it in removing its tracks therefrom, which
requires any suit on such bond to be brought before a definite
day therein mentioned, and the principal to be made a party
thereto, and served with process before such date, if the
same can be done by the exercise of due diligence, is valid and
binding upon the parties, and the delivery of such process to
the sheriff with directions to serve the same upon the prin‑
cipal within the time does not constitute due diligence where
such sheriff fails to make such service, and it is shown that
the same could easily have been made within the time provided
by the contract.   (p. 356).

(WILLIAMS, PRESIDENT, absent).

Error to Circuit Court, Randolph County.

Action by the City of Elkins against the Elkins Electric
Railway Company and others.   Verdict and judgment for plain‑
tiff, and defendants bring error.

*Reversed and remanded.*

*W. B. & E. L. Maxwell,* and *Hoffheimer & Templeman,* for
plaintiffs in error.

*Samuel T. Spears,* for defendant in error.

RITZ, JUDGE:

The defendant, Elkins Electric Railway Company, for some
reason not apparent, desiring to abandon a part or the whole of
its system and remove its tracks from the streets of the city of
Elkins, procured leave from the council of that city to do so upon
condition that it execute a bond in the penalty of five thousand

dollars, conditioned to replace the street paving and put the same in as good condition as it was before the removal of the tracks. One J. C. McSpadden was the president of the railway company and the owner of about ninety-five per cent. of its stock. All of the transactions with the council were conducted by him. The materials thus removed were sold by the railway company, and the proceeds of the sale applied to discharge debts for which McSpadden was surety or endorser. Upon the leave being granted defendant to remove the tracks under the conditions aforesaid McSpadden offered himself as surety upon the bond, but the council refused to accept him as such, and required that the company either deposit five thousand dollars in money or give a bond with a surety company authorized to do business in the state as surety. A bond was thereupon prepared by the attorneys for the city in which the defendant Elkins Electric Railway Company, a corporation, was made principal, and J. C. McSpadden and a surety company, to be supplied, to be sureties. McSpadden applied to the defendant American Surety Company to become surety on this bond. It declined to do so, but agreed to become surety upon a bond in which the Elkins Electric Railway Company and J. C. McSpadden would be principals and it surety. The Elkins Electric Railway Company and McSpadden thereupon made an application in writing to the surety company requesting it to become surety on such a bond, and both agreeing to indemnify it against any loss which it might sustain by reason of the suretyship. The surety company thereupon prepared a bond of this kind, and by its proper officer executed the same under its seal as surety, and sent the same to McSpadden to be executed by the railway company and himself as principals. Upon the receipt of the bond McSpadden went immediately to the city of Elkins and procured a special meeting of the council of that city for the purpose of accepting the bond and closing the transaction. He executed the bond in the name and under the corporate seal of the railway company as a principal, but did not execute it himself as such principal. The bond upon its face specified that the railway company and McSpadden were principals. Executed in this incomplete form McSpadden tendered the bond to the council of the plaintiff which accepted it. The

railway company failed to perform the obligation it undertook to put the streets in good condition, and this suit was brought upon the bond to recover the damages sustained by the city by reason of its failure in this regard.

Two defenses are relied upon to defeat this action, the first being that there is no liability upon the bond by reason of the fact that it was never executed by one of the principals, and second, that the bond by its terms provides that any suit brought upon it must be brought before a certain date, and that such suit must be brought against both the principals and the surety, and process served before a day named in the bond, if such service can be made with due diligence, and that such service was not made upon the railway company prior to the day thus specified, nor was it shown that reasonable diligence had been used to make such service prior to that time, although the suit was brought within the period prescribed.

The plaintiff seeks to avoid the defense based upon the failure of one of the principals to execute the bond, upon the theory that such principal was bound for the obligation undertaken to be performed by the railway company in any event, and that, this being true, under the decision of this court in *Star Grocery Company* v. *Bradford,* 70 W. Va. 496, the bond would not be invalid because of his failure to execute it. It is held in that case that the sureties in a bond are not released because of the omission of the principal to execute it if such principal is bound by law or a collateral contract recited in the bond for the performance of the duty thereby required. The principal in the case above cited was bound directly to the obligee in the bond, it being a bond conditioned for his accounting for money or property of the obligee coming into his hands, and of course without any bond being given he would be liable to the owner of the property to account therefor by reason of his contract of agency. It is sought to show that McSpadden was bound to the city to perform the obligation of this bond by reason of the fact that he was practically sole owner of the railway company, and that the money derived from the sale of the rails taken up from the railway track was applied to the discharge of debts for which he was liable as endorser or surety, and further that he had agreed to be

personally responsible for the obligation; and further that by reason of his joining in the application to the surety company for the bond, and agreeing together with the railway company to indemnify the surety for any loss it might sustain he became liable within the meaning of the decision in the case of *Grocery Company* v. *Bradford, supra.*

Does the fact that McSpadden would be benefited by having the debts of the railway company paid for which he was liable as endorser or surety make him in fact the principal in the transaction, or, if not, is this a sufficient consideration for his oral promise to be liable to perform the obligation, conceding that he made such promise? It appears that the railway company was insolvent, and that McSpadden would have been required to pay the debts which were paid by the sale of the material from the tracks removed had the permission to remove the same not been given, and further that he owned, as before stated, about ninety-five per cent. of the stock of the railway company. This did not create a liability upon his part as an individual to perform the railway company's obligations. It was a corporation formed for the very purpose of constructing and operating a street railway, and the contract was entered into, not with McSpadden, but with the corporate entity. The fact that its principal stockholder and president was the efficient agent on its behalf does not of itself impose any liability upon him to perform the obligation which he undertook on behalf of the company, nor is it a sufficient consideration for a verbal promise made by him to become liable, under our decision in the case of *Hurst Hardware Company* v. *Goodman,* 68 W. Va. 462.

Does the fact that McSpadden was bound to indemnify the surety make it unnecessary for him to execute the bond as principal? In the case of *Star Grocery Company* v. *Bradford, supra,* as before stated, the obligation of the principal who failed to sign the bond was direct to the obligee therein, and it was held that such an obligation of the named principal would take the place of his actual execution of the bond. In this case McSpadden is under no obligation to the city of Elkins. There was no contract between him and the plaintiff which it could enforce. The

only obligation which he undertook was to indemnify the surety in the bond in case it was injured or damnified by reason of its suretyship. This obligation could not arise until there was a bond executed upon which an obligation could arise independent of the collateral contract of indemnity. The surety agreed to be bound on a bond with the railway company and McSpadden as principals, and in no other way. If McSpadden was already bound as a principal to the obligee, then it might be said that his execution of the bond would be a purely perfunctory matter, and the liability of the surety would not be affected by his failure to execute it, for the reason that his execution of the bond would not make him under any other or different obligation than he was already under. But this cannot be said of his undertaking in the application for the bond to indemnify the surety in case it incurred any liability thereon. This made him in no way liable to the obligee in the bond. His relations to the defendant were exactly the same as they were before he signed that application. Many authorities, as appears from the opinion in the case of *Grocery Company* v. *Bradford, supra,* hold that even where the principal in the bond is directly bound to the obligee, the surety will be discharged if the principal fails to execute the instrument, but the better opinion, as we think, is that laid down in that case, and that is that where by law, or by a collateral contract recited in the bond, the principal is bound to the obligee therein, his failure to execute the bond will not release the surety. This bond provided on its face that the railway company and McSpadden should both be principals, and it was apparent to the plaintiff when it accepted it that this was the case. The surety company accepted the liability on these terms. It stated to the plaintiff that it would be bound to perform the obligation specified in the bond provided it was not performed by the railway company, or by McSpadden, or both. It would not and did not undertake to perform that obligation in case of the failure of the railway company alone, and we are constrained to hold that by accepting this bond without requiring it to be executed by one of the principals, the surety never became liable thereon: *LaBelle Iron Works* v. *Quarter Savings Bank,* 74 W. Va. 569.

It is also contended that a recovery cannot be had in this case for the reason that the process commencing the suit was not served upon the railway company within the time limited in the contract.  The bond provided that no claim, suit or action, by reason of any default, should be brought against the principal or surety after the 9th of October, 1917, and that service of writ or process commencing any such suit or action be made on or before such date, and that the principal be made a party to any such suit or action, and be served with process commencing the same, if with reasonable diligence he can be found.  This suit was instituted prior to the 9th day of October, 1917, and the process executed upon the surety prior to that date.  The railway company was made a party to the suit as required by this condition.  It had an attorney-in-fact resident in the city of Elkins upon whom service of process could have been had at any time.  The process was placed in the hands of the sheriff of Randolph county, and he was directed by counsel for the city to serve the same before the 9th of October.  The party upon whom service was to be made was a well known attorney resident in the city of Elkins, and well known to the sheriff.  The sheriff states that when he got the process he called up the office of the attorney and found that he was out.  He then called up his residence and found that he was not at home.  It seems that he made no other effort to serve the process, although something like two weeks elapsed between that time and the 9th of October.  The process was actually served on the 18th day of October.  It is shown by the attorney-in-fact that he was not out of the county of Randolph between the time the process was issued and the 9th of October; that he might have been out of the city of Elkins during that time, but that he was at home or in the city of Elkins during most of the intervening time.  It seems to be conceded by the plaintiff that such a stipulation as this contained in the contract is a valid and binding one, and the authorities hold that such a limitation, even though it provides a shorter term within which suit must be brought than the Statute of Limitations, is valid and binding upon the parties.  *Mc-Farland & Steele* v. *Ins. Co.*, 6 W. Va. 437; *Riddlesbarger* v. *Ins. Co.*, 7 Wall. 386; *Express Co.* v. *Caldwell*, 21 Wall. 264;

*Railway Co.* v. *Harriman,* 227 U. S. 657; *Ins. Co.* v. *Aiken,* 82
Va. 424; *Ins. Co.* v. *Wells,* 83 Va. 736.   The plaintiff, however,
says that it did exercise due diligence in this regard, and this
question was submitted to the jury by an instruction.     Its con-
tention that due diligence was used is based upon the fact
that the process was delivered to the sheriff with directions to
serve the same before a certain date.   Did this relieve the plain-
tiff from the obligation to see that the process was actually
served before that date?   The undertaking is to serve the pro-
cess before that date, if by due diligence the same can be done.
There is not the slightest doubt but that with any sort of dili-
gence the process could have been served.   The sheriff does not
give any satisfactory excuse for his failure to serve it after mak-
ing the one effort on the day it was delivered to him and he
found the attorney-in-fact away from his residence.   The obli-
gation of the city in this case was not to use diligence to deliver
the process to an officer for service, but it was to serve the pro-
cess, and this obligation could only be met by using every rea-
sonable effort that could be made to secure that end.   When one
undertakes by contract to do a certain thing he cannot be ex-
cused by failure of the agency which he employs to exercise the
diligence required.   He must go further and employ such agen-
cies as will accomplish the purpose, or else accept the result of
their failure.   As before stated, there is no excuse offered for
the failure to serve this process within the time stipulated in
the contract, and the right to recover should have been denied
upon this ground.

What we have said sufficiently indicates the proper procedure
to be had upon a retrial of the case, and renders it unnecessary
to consider the instructions given and refused upon the former
trial.   The judgment complained of is reversed, the verdict set
aside, and the case remanded for a new trial.

*Reversed and remanded.*