### J. E. MITCHELL v. HYDRAULIC BUILDING STONE COMPANY.

Decided May 12, 1910.

**1.—Corporation—Powers—Charter.**

The specification, in the charter of a corporation, of the purpose of its creation as being "to manufacture and deal in building material as is necessary in the transaction of business" did not give it power to contract to erect a building.

**2.—Same—Contract—Incidental to Corporate Purpose.**

A contract to construct a building which involved about equal expenditure for labor in construction and for materials furnished could not be regarded as merely incidental to the sale of the materials and authorized by implication from the charter power to manufacture and deal in the building materials.

**3.—Bond—Signature of Principal—Ultra Vires Contract.**

A bond to secure the performance of an obligation undertaken by another is not void as to the sureties signing it because not signed by the principal; neither is it invalid as to the sureties because the undertaking of the principal was not binding on him, being a contract ultra vires by a corporation.

Appeal from the District Court of Tarrant County. Tried below before Hon. R. H. Buck.

*Bryan & Spoonts,* for appellant.—The Hydraulic Building Stone Company had made a written contract with appellant to furnish the material in its line, and place the same for the erection of appellant's house, whereby it was bound, and it was unnecessary for it to sign the bond with its sureties, Zurn and Harrold, their liability not being altered, lessened or increased in any respect by failure of the principal to sign the bond.—Wright v. Jones, 120 S. W., 1139; San Roman v. Watson, 54 Texas, 259; Railway Co. v. Lockhart, 39 S. W., 321; Cockrill v. Davie, 14 Mont., 131; Eureka Sand-Stone Co. v. Long, 11 Wash. 161; Shelton v. Wade, 4 Texas, 150; Lindsay v. Price, 33 Texas, 280; McKellar v. Peck, 39 Texas, 381; Weis v. Chipman, 22 S. W.,

225; St. Louis Brewing Co. v. Hayes, 97 Fed., 859; Kurtz v. Forquer, 94 Cal., 94, 29 Pac. 413.

*John W. Wray,* for appellees.—The judgment of the court in so far as it effects the supposed liability of the sureties on the building bond, is correct.—B'Jaim v. Anglin, 107 N. W., 558; Gay v. Murphy, 34 S. W., 1091; Weir v. Mead, 101 Calif., 125; Board v. Murphy, 48 N. W., 302; Selby v. New Orleans, 44 So., 722; Goodyear v. Bacon, 20 N. E., 175; Johnson v. Kimball, 39 Mich., 187.

The alleged bond is not a complete and binding instrument on the sureties in the absence of the signature of the principal.—Goodyear v. Bacon, 20 N. E., 175; Safranski v. St. Paul Ry. Co. 75 N. W., 17; Martin v. Hornsby, 56 N. W., 751; Wright v. Jones, 120 S. W., 1139.

The company's agreement to do the excavating, the grading, furnish the cement and do the cement floors, furnish the brick and do the brick work, manufacture the concrete blocks and erect them, to furnish material and do the work on a porch, portcochere and chimneys, was, and is wholly outside of, and beyond its corporate powers, ultra vires and void.—Central v. Pullman, 35 L. ed. (U. S.) 55; Day v. Company, 23 N. W., 628; People v. Company, 22 N. E., 798; National v. Home, 54 N. E., 620; Northside v. Worthington, 88 Texas, 562.

The written contract entered into by appellant and the company was executory, in excess of the company's powers, went beyond its chartered provisions, and is wholly void and unenforcible.—Wire Co. v. Baltimore, 74 Fed. 367; People v. Campbell, 38 N. E., 991; Consumers v. Quinby, 137 Fed., 898; Chewacla v. Dismukes, 87 Ala., 344; Street v. Louisiana, 26 So., 596; Day v. Company, 57 Mich. 146; Bosshardt v. Crescent Oil Co. 32 Atl., 1120; Bangor Broom Co. v. Whiting, 29 Me., 123.

WILLSON, CHIEF JUSTICE.—The building stone company was a corporation under the laws of Texas. As such it undertook by its contract in writing, dated September 26, 1906, in consideration of $2,500 to be paid to it by Mitchell, to furnish material therefor and to "well and sufficiently perform and finish" for Mitchell, under the direction and to the satisfaction of his architects, "all the work included in. the excavating, grading, cement floors, brick work, concrete blocks and footings . . . of the two story and basement residence" to be constructed for said Mitchell. To secure the performance by the building stone company of its undertaking under the contract, an instrument dated October 1, 1906, purporting on its face to be the bond in the sum of $1,250 of the building stone company as the principal obligor therein, but which was never signed by it, was executed by appellees Jake F. Zurn and E. B. Harrold, as sureties. It appears from the record that after it entered into the contract, the building stone company did "a portion of the excavating" it had undertaken to do, and, that on its failure to further comply with its contract, Mitchell had the portion of the house the building stone company had undertaken but failed to construct, constructed by other parties, and out of a different character of material from that the building stone

company had bound itself to furnish and use. Mitchell then brought his suit against the building stone company, and against Zurn and Harrold as the sureties on said bond, for damages he claimed to have suffered by reason of the breach by the building stone company of its contract. As the result of a trial before the court without a jury, Mitchell recovered a judgment against the building stone company for the sum of $1,175 as the damages he was entitled to, but was denied a recovery as against appellees, Zurn and Harrold. From conclusions of fact made by the court, it appears that he found "that the Hydraulic Stone Company refused to carry out the contract, and breached the same in every particular; that by such refusal and breach, the plaintiff is damaged and actually lost the sum of $1,175, divided into the following items, to wit:

"Failure and refusal to furnish cement porch, etc., ........ $50.00
"Failure and refusal to furnish cement floors, etc., ........ 55.00
"Failure and refusal to furnish brick work, etc., ........ 95.00
"Failure and refusal to furnish cement blocks, ........... 585.00
"Failure and refusal to furnish labor and work on, and for
     placing cement blocks, ............................ 390.00
                                                     ————————
                                                     $1175.00"

The trial court's conclusions of law were, "that plaintiff is entitled to recover of the Hydraulic Building Stone Company said sum of $1,175, and since the Hydraulic Building Stone Company, the party signing the contract for the faithful performance of which the bond was required and given, did not sign said bond, but were recited in said bond to be the principal thereto, and said bond was signed only by defendants Zurn and Harrold, I am of the opinion that defendants Zurn and Harrold are not bound by the bond, and that plaintiff is not entitled to recover as against them."

The appeal is prosecuted by Mitchell.

*After stating the case as above.*—In disposing of this appeal we will consider questions made by the assignments and cross-assignments, without reference either to the order in which they are presented in the briefs, or to the parties presenting them.

Was the contract void as to the building stone company, because an undertaking beyond the scope of its powers as defined by its charter? We think the question must be answered in the affirmative. The building stone company had received from appellant no part of the consideration to be paid to it for performance by it of its undertaking under the contract. It therefore, was in a position to assert as a defense to appellant's suit that the contract made the basis of same was *ultra vires* as to it. The purpose of its corporation, as specified in its charter, was "to manufacture and deal in building material and to purchase and sell such material as is necessary in the transaction of its business." With only such power conferred upon it, it undertook by the contract, in addition to furnishing the material therefor, to do the work necessary in grading and excavating for the building, in con-

structing cement floors therefor, and in building with brick and concrete blocks the foundation and walls thereof. Clearly, by the terms of its charter it was not expressly authorized to undertake such work. Should such an undertaking be regarded as incidental to an exercise of the power expressly conferred upon the building stone company, because reasonably necessary to enable it to carry on its business of manufacturing and dealing in building material? While it does not so appear from the record, it may be that the purpose of the building stone company in entering into the contract was to effect a sale of material to go into the building, and it may be that it could have effected a sale thereof in no other way than by doing the work specified in the contract. But this, we think, would not be a sufficient reason for holding its undertaking to do such work to be within its charter powers. The testimony indicated that the work it undertook to do was worth about as much as the material it was to use in doing it. The work and material together was worth, according to the testimony of a witness, about $3,800. So, to support the contract as one the building stone company had power to make, it would be necessary to hold that its undertaking to do about $1,900 worth of work, was an incident merely to the sale by it of about $1,900 worth of material. Such a holding, it seems to us, would not be reasonable. It would be only a little short of saying that the building stone company could bind itself to do any and every thing which, directly or indirectly, would result in a sale of material it was authorized to deal in. "It can not be said," the court remarked in Safety I. Wire & C. Co. v. Baltimore, 74 Fed., 372, "that anything which will promote a demand for goods manufactured under the charter is within the incidental powers of the corporation. Were this true, a corporation organized for the business of quarrying rock could contract for the erection of a costly building, in the construction of which its rock would be used. A corporation organized for the manufacture of terra-cotta pipes could contract for the sewerage of a large city." Not only would such a view require us to ignore the general policy of the law (Ramsey v. Todd, 95 Texas, 614, 93 Am. St., 875) forbidding the creation in this State of a corporation for more than one purpose, and forbidding the exercise by a corporation of other powers than those conferred upon it in its creation, but it also would require us to set at naught the right of the holders of the stock of the corporation, to have the use of its capital limited to the purpose of its creation. It would have justified the building stone company, had it ignored the protest made by one of its stockholders against its proceeding further with its undertaking to do the work specified in its contract, and it would have permitted the building stone company, in the face of such protest, to hazard its capital in an enterprise involving risks never contemplated by its stockholders,—as, for instance, risks of liability for damages for personal injuries which might be suffered by its employes, while engaged in the work, damages for faulty construction of, or delay in the completion of the walls, etc., of the building. Such a view of the law, clearly, we think, is not maintainable, and we hold that the undertaking of the building stone company was not incidental to the purpose of its incorporation, as reasonably necessary to enable it to ac-

complish that purpose. Safety I. Wire & C. Co. v. Baltimore, 74 Fed., 367; Davis v. Railway Co. 131 Mass., 258, 41 Am. Rep., 221; Northside Ry. Co. v. Worthington, 88 Texas, 563, 53 Am. St. 778.

In drafting the contract between the building stone company and appellant, a printed form was used. Following that form, on the same sheet of paper, was a printed form of a bond, which was used in drafting the bond in question. The bond recited that the "Hydraulic Building Stone Co., a corporation of the State of Texas, as principal, and . . . and . . . as sureties, are held and firmly bound unto J. E. Mitchell, of Tarrant County, State of Texas, in the sum of $1,250 lawful money of the United States of America, well and truly to be paid to the said J. E. Mitchell at Fort Worth, Texas, for which payment, well and truly to be made, we bind ourselves and each of us by himself, our and each of our heirs, executors and administrators," etc., on the condition that the building stone company should perform and fulfil the covenants, stipulations and agreements in its "certain contract for the performance of certain work, and furnishing of certain materials in said contract described, which said contract is hereto annexed." The building stone company had executed the contract, but had not signed the bond so drafted. But the bond had been duly and unconditionally, so far as the record shows to the contrary, executed by Zurn and Harrold as sureties. Was the bond, because it had not been signed by the principal, void as to the sureties? The authorities in other jurisdictions are in conflict (1 Brandt on Suretyship, secs. 169, 170; 27 A. & E. Ency. Law, pp. 438, 439), but it is believed that those in this State, and, perhaps, the weight of those outside this State, indicate that the question should be answered in the negative. Wright v. Jones, 120 S. W., 1140; St. Louis Brewing Association v. Hayes, 97 Fed., 859; Kurtz v. Forquer, 94 Cal., 91, 29 Pac. 413; Eureka Sandstone Co. v. Long, 11 Wash., 161, 39 Pac., 446; Cockrell v. Davie, 14 Mont., 131, 35 Pac. 955; 1 Brandt on Suretyship, sec. 170, and cases there cited; 27 A. & E. Ency. pp. 438 and 439, and cases there cited; Shelton v. Wade, 4 Texas, 150, 51 Am. Dec., 722; San Roman v. Watson, 54 Texas, 259; Houston & T. C. Ry. Co. v. Lockhart, 39 S. W., 321. "The bond," said the court in one of the cases cited (Wright v. Jones), "created no liability on the part of C. C. and E. H. Jones additional to that created by their execution and delivery of the contract to erect the house." And in another of those cases (St. Louis Brewing Association v. Hayes) the court said: "Do we find in the case at bar that the signature of the principal would have any effect on the rights or liabilities of the sureties? He had already signed the contract creating the agency. The bond was a part of that contract given pursuant to its terms. The sureties could be held liable for no sum, unless the principal was also liable for the same under the contract. The signing of the bond by the principal would not change his liability in any way, nor vary the measure of evidence required to fix his liability. No breach of the bond could be shown without first proving a debt of the principal to the payee in the bond." We hold that the bond was not void as to sureties merely because it had not been signed by the principal therein. Nor do we think it was void as to

the sureties, because the contract which it was made to secure the performance of was *ultra vires,* and therefore void, as to the principal. It is generally held that incapacity of the principal to bind himself by a contract, does not render void the undertaking of the surety that the principal will comply with his contract. "Where a party," says Brandt, "becomes the surety of a married woman, an infant, or other person incapable of contracting, he is bound, although the principal is not. With reference to this it has been said that: 'Fraud, illegality or mistake, which may rescind the contract of the principal, induces the discharge of the sureties; but if the invalidity of the contract rests upon reasons personal to the principal, in the nature of a privilege or protection, the principal acquires a personal defense against the contract,' but the contract subsists, and the sureties may be charged thereon. The disability of the principal may be the very reason why the surety was required." 1 Brandt on Suretyship, sec. 171, and authorities there cited; and see 27 A. & E. Ency. Law, p. 467.

The conclusions reached with reference to the questions determined render it unnecessary to consider several cross-assignments presented by appellee.

The judgment is reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*