KAUFMAN et ux. v. CHRISTIAN-WATHEN LUMBER CO. et al. (No. 5594.)

(Court of Civil Appeals of Texas. San Antonio. March 1, 1916. On Motion for Rehearing, March 22, 1916.)

1. CONTRACTS ⟳350(1)—BUILDING CONTRACT —ALTERATIONS—SUFFICIENCY OF EVIDENCE.

In an action by a contractor against the owners for a balance due, in which the defendant interposed a counterclaim for the expense of completing the building after breach by plaintiff, evidence *held* sufficient to support finding that it was impossible to tell what portion of the material covered by the architect's certificate and used in completing the building was used in making changes not authorized by the contract in the work done by the contractor, and what portion was expended in completion of the building according to the terms of the contract, so that defendant could not recover.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1819, 1822, 1823; Dec. Dig. ⟳ 350(1).]

2. CONTRACTS ⟳350(1)—BUILDING CONTRACT —COST OF COMPLETING HOUSE—SUFFICIENCY OF EVIDENCE.

In an action by a contractor for a house against the owners for a balance, evidence *held* sufficient to show that the amount of labor necessary to complete the house in accordance with the contract and specifications was the difference between the total amount paid by defendant for labor and that paid for labor in making unauthorized changes in the work done by plaintiff.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1819, 1822, 1823; Dec. Dig. ⟳ 350(1).]

3. DAMAGES ⟳189—BUILDING CONTRACT— POSSIBILITY OF RENTING — SUFFICIENCY OF EVIDENCE.

In an action by a contractor for a house against the owners for a balance, evidence *held* sufficient to support finding that there was no proof that the building could have been rented, if ready, from the time it was contracted to be finished until it was actually finished.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 288, 512; Dec. Dig. ⟳189.]

4. DAMAGES ⟳85—BUILDING CONTRACT—DELAY IN COMPLETION—LIQUIDATED DAMAGES.

Where the owner of a house under construction on June 16th wrote the contractor, who had abandoned, that, if he did not go to work by June 19th, the owner would take possession of the premises and complete the house, which notice had no effect, the owner waiting till September, such owner could not recover stipulated damages caused by such delay in completion after the date set for going to work.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 179–181, 183–187; Dec. Dig. ⟳ 85.]

5. DAMAGES ⟳85—LIQUIDATED DAMAGES.

Where a building contractor abandoned work and caused delay in completion, the owner was entitled to recover the stipulated damages in absence of a showing that the same amounted to a penalty or was disproportionate to the actual damage sustained.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 179–181, 183–187; Dec. Dig. ⟳85.]

---

⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

6. PRINCIPAL AND SURETY ☞7—SURETY FOR CORPORATION—ULTRA VIRES ACT.

The bond given by a surety for a corporation is binding upon it, even though the contract, performance of which the bond was made to secure, was ultra vires as to the corporation.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 8–12, 14, 16, 18; Dec. Dig. ☞7.]

Error from District Court, Bexar County; W. F. Ezell, Judge.

Suit by the Christian-Wathen Lumber Company against L. Kaufman and wife, in which defendants impleaded Lee Garcia and another. From a judgment that plaintiffs take nothing by their suit and defendants nothing by reason of their cross-action, defendants bring error. Judgment reversed in part and rendered for defendants, and affirmed in part.

W. H. Russell and T. M. West, both of San Antonio, for plaintiffs in error. Hertzberg, Barrett & Kercheville, of San Antonio, for defendants in error.

MOURSUND, J. The Christian-Wathen Lumber Company sued L. Kaufman and wife for $2,095.72, alleged to be the balance due by Kaufman and wife to plaintiff on a contract by plaintiff and Lee Garcia to erect for Kaufman and wife a house on San Pedro avenue, in San Antonio. Kaufman and wife denied the plaintiffs' allegations, and by cross-action impleaded Lee Garcia and the Southwestern Surety Insurance Company of Oklahoma, the surety on the bond of Christian-Wathen Lumber Company and Lee Garcia, and asked for judgment against all of said parties, alleging that Kaufman and wife had paid out the sum of $2,046.92 in completing the house, which sum was $1,554.88 more than the original contract price. They further pleaded that the house was to be completed within 60 working days, or by May 17, 1913, and that they were entitled to recover penalties at the rate of $6 per day for every day the house remained uncompleted after May 17, 1913, that the building was not completed until 238 days after said date, and that Kaufman and wife were damaged in the sum of $1,428 by reason of such delay. They also alleged that they were damaged in the sum of $714, the rental value of the house for the time intervening between the 60 working days and the date the house was completed.

The Christian-Wathen Lumber Company, Lee Garcia, and the surety company answered this cross-action by general demurrer, special exceptions, and denials of the material allegations, and pleaded that said Kaufman breached the contract in various particulars. The surety company also pleaded that the contract of suretyship was not binding upon it, for the reason that the Christian-Wathen Lumber Company was a corporation incorporated under subdivision 24 of article 642, Revised Statutes 1895, for the purchase and sale of goods, wares, merchandise, etc., and its contract, jointly with Lee Garcia, to erect a house, was an ultra vires act, for which it could not be held liable, and therefore the surety company could not be held liable. It pleaded further that the said lumber company entered into a partnership agreement with Garcia to erect the building, and that said partnership was an ultra vires act and void, and therefore the surety company was not liable.

Judgment was rendered to the effect that plaintiffs take nothing by their suit, and that Kaufman and wife take nothing by reason of their cross-action. Kaufman and wife appealed. The trial court at the request of the surety company filed the following conclusions of fact:

"(1) I find that the Christian-Wathen Lumber Company, a corporation, plaintiff, and Lee Garcia, defendant, on March 5, 1913, contracted to erect and build for defendant L. Kaufman a two-story frame two-flat apartment house and shed in San Antonio, Tex., and that they contracted to erect and finish said building in 60 working days after date, for the sum of $3,989, subject to additions and deductions, and that said Christian-Wathen Lumber Company, a corporation, and Lee Garcia thereupon executed a bond on the same date, signed by Lee Garcia, principal, and the Christian-Wathen Lumber Company, by Ed A. Christian, president, principal, and by the Southwestern Surety Insurance Company of Oklahoma as surety, in the sum of $1,333, payable to L. Kaufman, to secure the faithful performance of the contract above referred to.

"(2) I further find that on said date the Christian-Wathen Lumber Company was a corporation organized under the laws of Texas, and does business in Texas, and was formed for the purpose of the purchase and sale of goods, wares, and merchandise and agricultural and farm products, including lumber, shingles, doors, sash, blinds, moldings, cement and brick, builder's hardware, nails and all other species and character of what is commonly known as goods, wares, and merchandise, and especially everything manufactured from timber and all articles used in building and erecting structures of all sorts.

"(3) I further find that the Christian-Wathen Lumber Company, a corporation, executed said contract for the erection of said building jointly with Lee Garcia, both acting as principals, and that both of them signed the bond jointly and as principals, for the purpose of profiting out of said transaction, and that they were acting jointly and as partners in the erection of said house for L. Kaufman.

"(4) That the Christian-Wathen Lumber Company entered into a partnership agreement with Lee Garcia to erect said building for the benefit of L. Kaufman and for the mutual benefit of each other.

"(5) That the Southwestern Surety Insurance Company refused to execute a bond for Lee Garcia to L. Kaufman for the erection of said building, but did agree to execute the bond for Lee Garcia and the Christian-Wathen Lumber Company jointly and as partners.

"(6) I further find that payments were made by L. Kaufman to the contractors on the dates stated in defendant Kaufman's first amended original answer, being paragraph 6, page 2.

"(7) I further find that the money claimed to have been expended by L. Kaufman for the completion of said building and contract was also·

expended for alterations and changes made in said building after the first contractors had abandoned the work, and that no proof was offered as to what portion of said money was expended for changes and alterations and what portion of said money was absolutely necessary for the completion of said building according to the original plans and specifications, and that, proof in this respect not being definite and such as the court could render intelligent judgment upon, the court therefore finds that defendant Kaufman has failed to prove what amount of money was actually expended and absolutely necessary to complete said building according to the original plans and specifications.

"(8) I further find that the architect of said job did not give written notice to the contractors to proceed to remove from the grounds or buildings any materials condemned by him, or to take down any portion of the work which the architect shall by written notice condemn as unsound or improper or as in any· way failing to conform to the drawings and specifications, except certain flooring in the servant's room and some other flooring material, which was removed by the contractors, and that all other changes and alterations on said job made by L. Kaufman after he undertook to complete the contract were unauthrized by the architect, and that the architect did not give written notice as provided in the contract, and that the said L. Kaufman was therefore unauthorized to expend money for these purposes and include said expenses in the amount necessary to complete the job, and because of his failure to show how much money was so expended and how much money was necessary to complete the building strictly according to plans and specifications the court is unable to determine the exact amount necessary to complete the building.

"(9) I further find that there is no proof to the effect that said building could have been rented from the time it was contracted to be finished until the time it actually was finished.

"(10) I further find that the defendant Kaufman paid on said contract $3,202.30, which was 80 per cent. of the work done and material furnished at time of payment.

"(11) I further find that defendant Kaufman paid to various persons for material furnished and labor performed on said building after he took charge of the same the sum of $2,046.92, which included cost of completing the building, and also included cost of making alterations and changes in the building, which alterations and changes were not directed to be made by the architect in charge."

The conclusions of law, in so far as they relate to the cross-action, are as follows:

"I find that L. Kaufman and wife are not entitled to recover any judgment against the Christian-Wathen Lumber Company, Lee Garcia, and the Southwestern Surety Insurance Company, for the reason that no proof has been introduced showing the exact amount expended for completing said building strictly according to plans and specifications, and I conclude that said Kaufman is not entitled to recover anything for loss in rent because of his failure to show that said building could have been rented during said time.

"I further conclude that the certificate issued by the architect after the completion of said building was not such as to authorize defendant Kaufman to recover the amount paid for changes and alterations in said building made after defendant Kaufman took charge of same for completing it; said certificate simply showing the gross amount paid for completing the building and for making the alterations and changes."

The seventh, eighth, and eleventh findings of fact are attacked by appellants as unsupported by the evidence. These findings are very important, in view of the fact that the contract provided: That the work was to be done under the direction of the architect, and that his decision as to the true construction and meaning of the drawings and specifications shall be final; that no alterations were to be made in the work except upon written order of the architect, the amount to be paid by the owner or allowed by the contractor by virtue of such alterations to be stated in such order; that, if the architect shall certify that the refusal or neglect of the contractor to supply workmen or materials is sufficient ground for such action, the owner may terminate the employment of the contractor and enter upon the work included in the contract and employ any other person or persons to finish the work and to provide the materials therefor, and in such case the contractors would receive no further payment until the work was wholly completed, at which time, if the unpaid balance of the amount to be paid under the contract shall exceed the expense incurred by the owner in finishing the work, such difference shall be paid by the owner to the contractor, but, if the expense exceeds the unpaid balance the contractors shall pay the difference to the owner, and the expense incurred through such default shall be audited by the architect whose certificates thereof shall be conclusive upon the parties.

Mr. Behles, the architect, testified that the house was completed according to the original plans and specifications up to the date when the owner took charge of it. However, his testimony at another place shows that he had condemned the flooring in the servants' room, and that the work which had been done was in pretty bad condition. He also testified that a great many partitions had to be taken out, also some flooring.

D. T. Shepherd, who had charge of the construction work after the owner took charge, testified that it did not take $1,335.85 worth of labor to complete the house, but that it did take that amount, including the cost of tearing out what had to be torn out and replaced; that he did not know how much of the material was used in replacing material torn out. A statement by him to Kaufman was introduced in evidence which shows that very many changes were made by him in the portion of the work already done. This statement shows that the total amount paid for labor in tearing out and replacing portions of the house was $329.85. Shepherd testified he made these changes without instructions from anybody. It is clear that he took the plans and specifications, placed his own interpretation thereon, instead of applying to the architect, and proceeded to make numerous changes. After the building was completed the architect gave Kaufman a certificate as follows:

"This is to certify that in completing your apartment house, corner Myrtle and San Pedro streets, which was taken over from the Chris-

tian-Wathen Lumber Company and Lee Garcia, contractors, amounts as follows:

For lumber from P. J. Owens Lumber Co.........................$  610 07
Millwork for H. Wagner..........     101 00
Labor complete..................    1,330 80."

This certificate included the material and labor for changes made, as well as for the completion of the house.

[1] In view of the above testimony, we conclude that the court was correct in finding that it was impossible to tell what portion of the material covered by the architect's certificate was used in making changes in the work already done, which changes were not made in accordance with the terms of the contract, as the architect had not directed that they be made, and in fact had approved the work found defective by Shepherd. It is clear, therefore, that no recovery could be had by Kaufman for any material covered by such certificate, and it is impossible to tell how much thereof was necessary for the completion of the building in accordance with the terms of the contract.

[2] We think, however, the court erred in not finding that the amount of labor necessary to complete the house in accordance with the terms of the contract and the specifications was the difference between $1,330.-80, the total amount paid out for labor, and $329.85, the amount paid for labor in making changes, namely, the sum of $1,000.95.

It follows that, as the remaining 20 per cent. of the contract price was only $786.70, and the Kaufmans paid out for labor in completing the building the sum of $1,000.95, they were entitled to recover the sum of $214.25 upon their count for damages by reason of having to complete the building.

[3] Appellants contend they should have recovered $600 as the reasonable rental value of the building for six months. The court found that there was no proof that the building could have been rented from the time it was contracted to be finished until the time it was actually finished. This finding is supported by the evidence, for the only evidence on the subject was that of Kaufman to the effect that after the building was completed it had a rental value of $100 per month.

[4, 5] Appellants also contend that the court erred in failing to render judgment in their favor for $6 per day as liquidated damages for each day from June 1, 1913, to November 26, 1913. The 60 working days expired June 1, 1913. Garcia testified he quit the job about the last of May. It appears that it was evident to Behles and Kaufman that the contractors had abandoned the work, for on June 16th Kaufman wrote Garcia that, if he did not go to work by Thursday, June 19th, Kaufman would take possession of the premises and complete the house. A carbon copy of this letter was sent to the surety company. There is no testimony that these notices had any effect, and yet Kaufman waited until September 5, 1913, and then wrote another letter to the surety company, stating that he had on that day dismissed the contractors, and allowing said company until August 6, 1913, in which to decide whether to complete the house or let him proceed to complete it. No explanation is made of the discrepancy in dates, nor of the long delay in proceeding to carry out the threat of taking possession on June 19th. No recovery should be had for the time covered by such delay, nor does the evidence furnish any basis for damages for the time intervening between September 5th and November 26th, but we fail to see upon what theory a recovery could be refused for the time intervening between June 1st and June 19th. There being no contention made in the pleadings that the provision for payment of $6 per day was intended as a penalty, or that it was so disproportionate to the actual loss that it would be unconscionable to permit the recovery thereof, and there being no evidence of the amount of actual damages, it seems that appellants should have been allowed to recover at the rate of $6 per day for each day intervening between June 1st and June 19th. Collier v. Betterton, 87 Tex. 440, 29 S. W. 467; Dilley & Son v. Wise and Hervey, 160 S. W. 985.

[6] The surety company by cross-assignments contends that the bond is not binding upon it, because the Christian-Wathen Lumber Company, a corporation, exceeded its powers in contracting to erect a building, and makes the further contention that the corporation, by said contract, entered into a partnership with Garcia, and therefore the contract was void. If it be conceded that the business of erecting buildings was not authorized by the articles of incorporation, and that the contract had the effect of surrendering to Garcia to a certain extent the control of the affairs of the corporation required by law to be exercised through its authorized officials and agents, and was therefore ultra vires, still it has been decided in this state, and we think correctly, that the bond is binding upon a surety, even though the contract which it was made to secure performance of was ultra vires. Mitchell v. Hydraulic Stone Co., 129 S. W. 148. The cross-assignments are therefore overruled.

The judgment of the trial court is reversed, and the cause remanded.

### On Motion for Rehearing.

The Southwestern Surety Insurance Company contends that we were in error in finding that the sum of $1,000.95 was proven to have been the amount paid out for labor to complete the house according to specifications. It is asserted that the statement only referred to by us as having been made by Shepherd relates only to labor utilized in tearing out and replacing defective material, and we concede the correctness of that assertion. It is further asserted that the evidence shows that changes were thereafter

made in completing the building and the sum of $1,000.95 includes the sums paid for labor necessary to make such changes. Both Shepherd and Behles testified the building was completed in accordance with the specifications, and we are unable to find any evidence which sustains the contention that changes were made. As was pointed out, the evidence fails to show the cost of the material used in replacing portions found by Shepherd to be defective and torn out and replaced, so it is impossible to make any finding with regard to the sum expended for material necessary to complete the building according to specifications. The motion for rehearing is overruled.

We are, however, of the opinion that, instead of remanding the cause for another trial, we should render judgment for the Kaufmans for the sum of $328.25.

Our former judgment is therefore set aside, and judgment rendered that L. Kaufman and wife recover of the Christian-Wathen Lumber Company, Lee Garcia, and the Southwestern Insurance Company said sum of $328.25. That portion of the judgment of the trial court to the effect that the Christian-Walthen Lumber Company take nothing by its suit against L. Kaufman and wife will not be disturbed.