## W. J. STEVENS CO. v. NOVICE STATE BANK. (No. 843–4912.)

Commission of Appeals of Texas, Section B.
Feb. 15, 1928.

1. **Banks and banking** ⬤�longrightarrow228—**Jury's findings on question whether bank selling cotton to plaintiff held same as security held to be conflicting on material issue, precluding judgment on verdict.**

In action against bank for money due purchaser of cotton under contract, after reclassification and reweighing of cotton, evidence showing that bank had lien on cotton *held* not to be undisputed, and jury's findings on question were conflicting on material issue, and no judgment could properly be entered thereon, and trial court should have set aside verdict and granted new trial.

2. **Banks and banking** ⬤⟶113—**If bank had lien on cotton and received benefit of sale by cashier, it was liable on sales contract.**

If bank had lien on cotton, and as result of sale by its cashier it received benefit thereof by applying proceeds of sale to indebtedness of owner of cotton to bank, it was legally obligated to perform conditions of sales contract.

3. **Banks and banking** ⬤⟶113—**Bank cannot retain benefits of contract made by its officer, even though unauthorized, without assuming burdens thereof.**

Bank will not be permitted to retain benefits of a contract made by its officers, even though unauthorized without assuming burdens thereof.

4. **Banks and banking** ⬤⟶101—**If bank held no lien on cotton, but cashier sold same as accommodation to owner, bank receiving no benefit, plea of ultra vires was valid defense to suit on sales contract.**

If bank held no lien on cotton sold by its cashier, but merely sold same at request of owner thereof as matter of accommodation, receiving no benefit from proceeds of sale, its plea of ultra vires was valid defense, in suit against bank for money due purchaser of cotton under contract after reclassification and reweighing of cotton.

5. **Banks and banking** ⬤⟶101—**If bank had lien on cotton, but sold same purely as accommodation to customer, it was not liable under sales contract.**

If bank had lien on cotton sold, but it received no benefit from proceeds of sale, selling same purely as an accommodation to its cus-

tomer, it was not legally obligated to perform conditions of sales contract.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by the W. J. Stevens Company against the Novice State Bank. Judgment for defendant was affirmed by the Court of Civil Appeals (294 S. W. 256), and plaintiff brings error. Reversed and remanded.

Dibrell & Snodgrass and J. B. Dibrell, Jr., all of Coleman, for plaintiff in error.

Critz & Woodward, of Coleman, for defendant in error.

LEDDY, J. Plaintiffs in error brought suit against the Novice State Bank alleging that they purchased cotton from the bank during the fall of 1919 under an agreement that settlement should be made upon the basis of outturns of the cotton at Coleman, Tex.; that the cotton was to be reweighed and reclassified at that point and certain deductions to be made from the cotton, using middling as a basis, and that upon a reclassification and reweighing of the cotton the bank was indebted to them in the sum of $1,833.23.

Defendant in error pleaded that it did not make the contract sued upon, nor did it own the cotton in question or authorize its agent, the cashier, to sell the cotton or make any contract in reference to guaranteeing weights, grades, etc; that the cashier of said bank did not represent the bank in the transaction with plaintiffs in error, but, on the contrary, was representing the owners thereof, J. M. Summers and H. T. Day, and that the said cotton was sold by him at their request; that, if the contract alleged was made by its cashier, the same was ultra vires and void.

We set out the following issues submitted, and the jury's answers, such of them as were agreed upon:

"(1) Did the defendant, Novice State Bank, own the cotton purchased by J. E. Stevens Company? Answer: No.

"(2) Was H. D. Ayers representing the defendant, Novice State Bank, in the sale of the cotton to J. E. Stevens Company? Answer: No.

"(3) Did the cotton sold to J. E. Stevens Company come into possession of the defendant, Novice State Bank, as security for loans? Answer: No.

"(4) Did the Novice State Bank, acting by and through H. D. Ayers, its cashier, hold itself out to the plaintiffs, J. E. Stevens Company, as the owner of the cotton in controversy until after the said J. E. Stevens Company had purchased and paid for said cotton? Answer: No.

"(5) Was it agreed between plaintiffs, J. E. Stevens Company, and H. D. Ayers, cashier of the Novice State Bank, at the times the cotton in controversy was sold to J. E. Stevens Company, that final settlement should be made on outturns of the cotton at Coleman, Tex.? Answer: Yes.

---

⬤⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"(6) Did the Novice State Bank, acting by and through its cashier, H. D. Ayers, hold itself out to the plaintiffs, J. E. Stevens Company, as having the legal right and authority to sell said cotton? Answer: ———."

"Special issue No. 1, requested by the plaintiffs: Were the cotton tickets representing the cotton in question in this suit, at the time the cotton was bought by the said J. E. Stevens Company, in the possession of the Novice State Bank and held by said bank for the purpose of securing any indebtedness owing to the said bank? Answer: Yes."

Based upon these findings, the court entered judgment in favor of the defendant in error, and this action was affirmed by the Court of Civil Appeals.

Plaintiffs in error complain that the findings of the jury in answer to special issue No. 3 and special issue No. 1, requested by them, are in direct conflict, and, being upon a material issue, the court was not authorized to render judgment upon such findings. In the Court of Civil Appeals this contention was overruled upon the ground that the undisputed evidence showed that the bank had a lien upon the cotton; hence the conflict was immaterial. We are unable to agree with this conclusion of the Court of Civil Appeals. J. M. Summers, one of the owners of the cotton, testified:

"There was no agreement or statement between me and Mr. Ayers or security for anything I owed him."

With reference to the placing of the cotton tickets with the bank, he testified:

"I would turn the tickets for cotton I bought into the bank, and they held the tickets until the cotton was shipped, and when the cotton was shipped and he got the returns on the shipment, why, that money was credited on my account, and that is the way I paid the Novice State Bank on my cotton transactions, and the bank held the tickets on all this particular cotton we are talking about in this suit, for safekeeping, and it was handy you know. I turned them in to them and they held those tickets at that time. When I opened up that account Mr. Ayers did not tell me that I should turn in the tickets there. As to whether he was just letting me draw all the money I needed to buy cotton without any security whatever—as to whether that was the agreement between us: Of course there was an agreement, but I don't remember just exactly what it was. I remember the substance of the agreement, it was an agreement that when I sold this cotton, of course that the money should apply on the indebtedness. I don't remember about it being that the tickets should be held at the bank until I settled it; of course I turned the tickets in. The agreement didn't specify that they were to be held until the cotton was sold. I do know they held the tickets until the cotton was sold, and that the money, when the cotton was sold, was applied to pay my debts on the cotton account."

"They asked me just now if, when this cotton was sold, it was applied on my debts. As to whether I checked against that: Well, I just checked all of the time against the bank you know, when I would buy. They gave me credit for it. I meant that I had been given credit for it rather than applied it. I did not intend to convey the idea that the bank appropriated that money to its own use and did not give me credit for it on the books of the bank. I continued to check against that account."

After giving this rather confusing testimony, his last statement before leaving the witness stand was as follows:

"There was never anything said between me and Mr. Ayers in reference to that cotton standing security or having any lien to secure the bank. I never executed any written instrument giving a lien of any kind on this cotton. If I said awhile ago I gave a lien on the stuff when I started in the business, I didn't intend to."

J. M. Barnett, a director of the bank, testified:

"There was never any time that I knew of any lien given by Mr. Summers or Mr. Day, nor did the bank take any liens or create any lien by reason of any contract or agreement of any kind against any cotton bought by Mr. Summers or Mr. Day."

C. A. Parker, another director, gave testimony to the same effect.

It is true the president of the bank testified that the bank held the cotton tickets representing the cotton purchased by Summers and Day as collateral security for the amount the firm owed it, but this seems to have been a mere conclusion upon his part, as in other portions of his testimony he swears positively that there was no agreement of any kind by which the bank was to have a lien on the cotton. In one portion of his testimony he states:

"The Novice State Bank at that time, nor at any time during that period, didn't have or claim any lien of any kind on this cotton. There was no instrument executed or signed by anybody admitting or intending to create any lien."

[1] In view of this state of the record, the issue was, in our opinion, a controverted one. The findings of the jury were conflicting upon a material issue; hence no judgment could properly be entered thereon, and the trial court should have set aside the verdict and granted a new trial. Waller v. Liles, 96 Tex. 21, 70 S. W. 17; Williams v. Zang (Tex. Com. App.) 279 S. W. 815; Hair v. Wichita Valley Railway Co. (Tex. Civ. App.) 274 S. W. 247.

In view of another trial of this case, we deem it proper to briefly discuss the legal questions which we think should control the disposition of this case.

[2, 3] If it be determined that the bank had a lien upon the cotton in question and that as a result of the sale of the same by its cashier it received the benefit thereof by applying the proceeds of such sale to the indebtedness of the owners of the cotton to the

bank, it would be legally obligated to perform the conditions of such contract. It will not be permitted to retain the benefits of a contract made by its officer, even though unauthorized, without assuming the burdens thereof. Gaston v. Campbell, 104 Tex. 576, 140 S. W. 770, 141 S. W. 515; Kincheloe Irrigating Co. v. Hahn Bros., 105 Tex. 231, 146 S. W. 1187.

[4] A sale of cotton by the cashier of the bank as an accommodation for its customers is not incidental to the purpose of its incorporation as reasonably necessary to enable it to accomplish that purpose. If, therefore, the bank held no lien upon the cotton, but its cashier merely sold the same at the request of the owner thereof as a matter of accommodation, receiving no benefit from the proceeds of the sale, its plea of ultra vires would be a valid defense, and should be sustained. W. C. Bowman Lumber Co. v. Pierson (Tex. Civ. App.) 139 S. W. 618; Mitchell v. Hydraulic Bldg. Stone Co., 61 Tex. Civ. App. 131, 129 S. W. 148.

[5] Even if it should be found that the bank had a lien upon the cotton, if it received no benefit from the proceeds of the sale, selling the same purely as an accommodation to its customer, it would not be liable under the contract.

We recommend that the judgment of the trial court and the Court of Civil Appeals be reversed, and the cause remanded for another trial.

GREENWOOD and PIERSON, JJ. Judgments of the Court of Civil Appeals and district court both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.