Booth, Chief Justice,
delivered the opinion:
This is a suit by William MacDonald and H. V. Ball, contractors, doing business as the Wm. MacDonald Construction Company, to recover from the defendant the sum of $1,050, deducted by the defendant from the contract price of the work involved as liquidated damages for delay in perform- *577 «.nee. On February 28, 1925, plaintiff submitted a bid to construct for the United States Veterans’ Bureau a storehouse at Veterans’ Hospital #92, Jefferson Barracks, Mo. Plaintiff’s bid was $26,394 and plaintiff agreed to perform the work within 90 calendar days from the date of notification to proceed with performance. Plaintiff’s bid was accepted in writing March 21, 1925, a formal written contract between the parties was executed on April 9, 1925, and the plaintiff was notified to proceed with the work on May 4,1925, the same to be completed as per contract provisions on August 2,1925. The budding was not completed until September 5, 1925, and the defendant deducted the amount herein claimed as liquidated damages for delay, charging plaintiff with 30 days’ delay at the rate of $35 per day.
The plaintiff’s case is rested upon several propositions, each of which we think revolves around and is to be determined upon the causes which produced the delay and the provisions of the contract with respect to the liability of the parties for delays in the performance of the same. Article X of the contract, which we quote, covers the question of delay.
“Article X. EXTENSION of time. — For any unavoidable delay in the completion of the work (not the result of the fault or negligence of the contractor) arising from causes beyond the control of the contractor, to be determined by the head of the department or independent establishment, or an authorized representative thereof, which causes shall include, but shall not be restricted to acts of God, the Government, the public enemy or common carriers, fires, epidemics, quarantine restrictions, and strikes, wherever any of these causes of delay occur, there shall be allowed such extension of time for completion as may be found by the head of the department or independent establishment, or authorized representative thereof, to be equivalent to the delay or delays so occasioned, not less, however, than one day for every day of such delay. If an extension of time shall be granted for any of the causes specified above, the new date established by such extension shall be the date for completing the work and all of the provisions of this contract shall be enforceable as though such date had been originally specified: Provided, That notice in writing of the cause or causes of delay shall be given promptly by the contractor to the contracting officer: Provided further, That delay on the part of a subcontractor shall not entitle the contractor to any extension of time unless such delay arises from a cause herein specified and could not have *578 been avoided by the contractor. No delay shall be charged against the contractor where the head of the department or independent establishment certified that such delay has caused no damage to the United States. The extension of time provided in this article may be allowed or such certificate may be made at any time before final payment, but not thereafter.”
We also quote Article XI, providing for liquidated damages:
“Article XI. Liquidated damages. — The damages that may result from any delay in completion of any work by the time agreed upon will be difficult if not impossible of ascertainment. If any work is not completed on or before the date fixed for its completion by the terms of this contract, or by the date arrived at by any extension of time that may be allowed under the terms of this contract, the contractor shall pay to the Government as fixed, agreed, and liquidated damages the sum of thirty-five ($35) dollars for each calendar day’s delay until the work is satisfactorily completed, or until such time as the Government may reasonably procure the completion of the work by another contractor, or complete-the work its'elf. Whatever sums may be due as liquidated damages for delay may be deducted from payments due to the contractor or may be collected from the contractor or his sureties.
“The above provision for liquidated damages shall not prevent the Government from terminating the right of the contractor to proceed in case of default.”
As to the facts of the delay and the causes, the record is free from serious disagreements. The plaintiff, as soon as the contract award had been made, placed an order with the Truscon Steel Company, of Youngstown, Ohio, for the fabrication and delivery of certain metal-covered doors and jambs required under the contract, and prior to the receipt of orders to proceed with the work submitted to the defendant detailed blue prints which the plaintiff had received from the Truscon Steel Company for approval. The defendant did not approve the blue prints and returned them to the plaintiff on May 29, 1925, for modification. The plaintiff then called upon the Truscon Steel Company for modified blue prints, and thereafter, on June 17, 1925, eighteen days after the defendant returned the blue prints to the plaintiff, submitted to the defendant three additional blue prints from the steel company for approval. On June 23, 1925, six days after receipt of the blue prints by the defendant, the plaintiff was *579 advised by letter that they were approved and returned to plaintiff. The defendant, in returning to the plaintiff the blue prints involved, mistakenly transmitted three copies of one blue print instead of one copy of each of the three, and the resulting error was not finally straightened out until July 10, 1925. The plaintiff attributes to the defendant, because of the above facts, all fault with respect to this factor of delay. The record conclusively establishes that the plaintiff did not in its contract with the Truscon Steel Company fix any time limit for the delivery of the articles to be fabricated and delivered under same.
The testimony shows indisputably that notwithstanding the plaintiff’s urgent and persistent appeals to the steel company to deliver the doors and jambs, it delayed in so doing because of the congested condition of its manufacturing business. We are unable to ascertain from or discover in the record any convincing testimony that the delay in approving the blue prints occasioned delay in the delivery of the doors and jambs by the steel company, even if delays ascribable to a subcontractor were admissible under the contract terms for extension of time of performance. On the contrary, the evidence confirms the finding that the delay of the steel company was due to large orders prior to the plaintiff’s and which the company must comply with before reaching plaintiff’s. Aside from this, however, Article X of the contract expressly excluded by its terms delays due to subcontractors unless occasioned by the causes enumerated in the article or which could not have been avoided.
It is impossible from this record for the court to find as a fact that an insufficient time prevailed for the manufacture and delivery of the doors. To do so involves a degree of conjecture not warranted by the facts. To attribute delay because of lapse of time when the period of time concerned is well within the contract period of performance, exacts corroboration by proof of additional facts and circumstances, all of which contribute toward and are part of the delayed transaction. The plaintiff assumed the hazard of having the doors delivered within 90 days and knew that blue prints for their fabrication were not only indispensable but had to be approved by the defendant, and notwithstanding this *580 situation made no provision as to time of delivery, and we do not find of record proof that in any event the doors could have been delivered on time, or what proportion of the time consumed in their delivery is ascribable to the delay in the transmission of the blue prints.
The plaintiff emphasizes a provision which is a . part of Article X of the contract and apparently contends that this provision, coupled with the partial occupancy of the incomplete building by the defendant, precludes the assessment of liquidated damages, as was done by the defendant. The excerpt from Article X of the contract reads, “No delay shall be charged against the contractor where the head of the department or independent establishment certified that such delay has caused no damage to the United States.” The plaintiff treats this provision of Article X as an independent one, separates it from the context, and gives it effect as though it was the intention of the parties to construe the liquidated damage clause as a penalty. Article X of the contract contains numerous provisions upon the subject of delay, enumerates excusable causes, and points out a procedure for obtaining relief from delays due to the contractor’s course of performance, and in so doing provides that a certificate of no damages occasioned by the contractor will be sufficient to authorize the suspension of liquidated damage. Obviously in the absence of such a certificate the court is powerless in the premises. We do not think the above provision converted the liquidated damage clause into a penalty. It is no more than a specified permissive cause for extending time, of performance and excusing delays. The following cases cited by the plaintiff are inapposite, viz, Kaufman v. Christian Lumber Co., 184 S. W. 1045; Williams v. Golden, 247 Pa. 397; Dunn v. Morganthau, 73 App. Div. 14 N. Y. S. 147. The case of Bedford v. Miller, cited as 22 Fed. 368, we are unable to find. The citation is erroneous.
We had a similar state of facts as involved in this issue in Kohlman v. United States, 63 C. Cls. 604, and the case of United States v. Bethlehem Steel Co., 205 U. S. 105, is directly in point. In the Bethlehem case, p. 119, the Supreme Court said:
“The courts at one time seemed to be quite strong in their views and would scarcely admit that there ever was a valid *581 contract providing for liquidated damages. Their tendency was to construe the language as a penalty, so that nothing but the actual damages sustained by the party aggrieved could be recovered. Subsequently the courts became more tolerant of such provisions, and have now become strongly inclined to allow parties to make their own contracts and to carry out their intentions, even when it would result in the recovery of an amount stated as liquidated damages, upon proof of the violation of the contract, and without proof of the damages actually sustained. This whole subject is reviewed in Sun Printing & Publishing Association v. Moore, 183 U. S. 642, 669, where a large number of authorities upon this subject are referred to. The principle decided in that case is much like the contention of the Government herein. The question always is, What did the parties intend by the language used? When such intention is ascertained it is ordinarily the duty of the court to carry it out. See also Clement v. Cash, 21 N. Y. 253, 257; Little v. Banks, 85 N. Y. 258, 266.”
In this case we have a contract where time is the essence of the contract and the liquidated damage clause manifestly inserted for the reason that actual damages would be difficult to prove or estimate. The contractor was not ignorant of the scope and intent of the clause, and the parties clearly intended it as a liquidated damage clause. The partial occupancy of the incompleted building did not serve to waive contractual rights. Public emergency and convenience may have caused the defendant to occupy so much of the structure as was available though the entire building was still incomplete. The defendant did not accept the building until it was completed, nor was final payment made until that time. Article XI of the contract is plain and understandable and recites in detail the reason for its presence in the contract, and similar contractual clauses have too frequently been construed by this and the Supreme Court to warrant a long list of cited cases. Crane Co. v. United States, 46 C. Cls. 343, is a case in point. See also Pacific Hardware Co. v. United States, 49 C. Cls. 327, and Fowler v. United States, 51 C. Cls. 52.
We do not discuss the facts with reference to the locks and hinges for the doors, as no liquidated damages were imposed for the delay occasioned by the error made as to their size, etc., and as to extra work, this was all done under a proper change order, occasioned no delay, and was paid for as the *582 contract provided. The record supplies the fact that the contractor encountered difficulties in performance which delayed completion, and which under the contract provisions can not be held to be excusable by the court. Labor shortage was one and the congestion of work at the steel company’s plant was another, and while the contractor was remiss in following the procedure set forth in the contract to obtain relief from what was alleged as unavoidable delays, we think the record discloses that as a matter of fact the defendant under the contract was authorized to make the deduction made.
The petition will be dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Green, Judge, concur.